UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KASI A. FOSS,<br><br>            Plaintiff,<br><br>            v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>            Defendant. | )<br>)  No. CV-07-0091-AMJ<br>)<br>)  REPORT AND RECOMMENDATION<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing without oral argument on October 9, 2007. (Ct. Rec. 16, 19). Plaintiff Kasi Foss ("Plaintiff") filed a reply brief on September 27, 2007. (Ct. Rec. 21). Attorney Maureen Rosette represents Plaintiff; Special Assistant United States Attorney Daphne Banay represents the Commissioner of Social Security ("Commissioner"). The parties have not filed a recent consent to proceed before a magistrate judge. (*See*, Ct. Rec. 14). After reviewing the administrative record and the briefs filed by the parties, the court recommends **granting** Defendant's Motion for Summary Judgment (Ct. Rec. 19) and **denying** Plaintiff's Motion for Summary Judgment (Ct. Rec. 16).

## JURISDICTION

On April 8, 2004, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits alleging disability since June 6, 2003.

REPORT AND RECOMMENDATION ~ 1

(Administrative Record ("AR") 46-48, 299-302).  Plaintiff's application for SSI was denied initially and on reconsideration.  An administrative hearing was held before Administrative Law Judge ("ALJ") Paul L. Gaughen on August 9, 2006.  (AR 306-328).  On October 12, 2006, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 17-26).  On February 27, 2007, the Appeals Council denied Plaintiff's request for review.  (AR 5-7).  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on March 23, 2007.  (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcripts, the ALJ's decisions, the briefs of both Plaintiff and the Commissioner and will only be summarized here.  Plaintiff was 37 years old on the date of the August 9, 2006 administrative hearing, has a high school plus education and has past work experience as a product distributer, a certified care giver and a clerical/parcel carrier.  (AR 58, 61, 312).  She alleges disability as of June 6, 2003, due to severe tendinitis in both arms and hands, severe depression, and anxiety.  (AR 52).  Plaintiff reported that she stopped working because "[i]t was to [sic] hard & my doctor felt it was needed."  (AR 52).

**STANDARD OF REVIEW**

_____Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the

determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal

standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are

denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is not, the
decision maker proceeds to step two, which determines whether
Plaintiff has a medically severe impairment or combination of
impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination
of impairments, the disability claim is denied.  If the impairment
is severe, the evaluation proceeds to the third step, which
compares Plaintiff's impairment with a number of listed
impairments acknowledged by the Commissioner to be so severe as to
preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d),
416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment
meets or equals one of the listed impairments, Plaintiff is
conclusively presumed to be disabled.  If the impairment is not
one conclusively presumed to be disabling, the evaluation proceeds
to the fourth step, which determines whether the impairment
prevents Plaintiff from performing work he has performed in the
past.  If Plaintiff is able to perform his previous work, he is
not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If Plaintiff
cannot perform this work, the fifth and final step in the process
determines whether Plaintiff is able to perform other work in the
national economy in view of his residual functional capacity and
his age, education and past work experience.  20 C.F.R. §§
404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish
a *prima facie* case of entitlement to disability benefits.
*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.
Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is
met once Plaintiff establishes that a physical or mental

impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ALJ'S FINDINGS

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity at any time relevant to his decision. (AR 19). At step two, the ALJ determined that Plaintiff has left ankle post traumatic osteoarthritis and bilateral wrist pain, left greater than right, but that Plaintiff does not have an impairment or combination of impairments that causes more than minimal functional limitations. (AR 19-26). The ALJ thus determined that Plaintiff does not have a severe impairment as defined in the Social Security Act. (AR 19-26). Accordingly, the ALJ concluded, at step two of the sequential evaluation process, that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 26).

## ISSUES

Plaintiff contends that the Commissioner erred as a matter of law. She specifically argues that:

1. The ALJ erred at step two of the sequential evaluation process by concluding that Plaintiff has no severe medically determinable impairment(s); and

2. The ALJ failed to provide proper rationale for rejecting Plaintiff's symptom testimony.

///

1    This court must uphold the Commissioner's determination that
2  Plaintiff is not disabled if the Commissioner applied the proper
3  legal standards and there is substantial evidence in the record as
4  a whole to support the decision.

5                              **DISCUSSION**

6  **A.    Plaintiff's Credibility**

7    Plaintiff argues that the ALJ failed to provide specific,
8  clear and convincing reasons why her testimony regarding her
9  ability to sit, stand, walk, drive, lift, carry and use her arms
10 was rejected.  (Ct. Rec. 17 at 13-15).  The Commissioner asserts
11 that the ALJ provided clear and convincing reasons to reject
12 Plaintiff's subjective complaints as being not entirely credible.
13 (Ct. Rec. 20 at 14-19).

14   It is the province of the ALJ to make credibility
15 determinations.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.
16 1995).  However, the ALJ's findings must be supported by specific
17 cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.
18 1990).  Once Plaintiff produces medical evidence of an underlying
19 impairment, the ALJ may not discredit Plaintiff's testimony as to
20 the severity of an impairment because it is unsupported by medical
21 evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)
22 (citation omitted).  Absent affirmative evidence of malingering,
23 the ALJ's reasons for rejecting Plaintiff's testimony must be
24 "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th
25 Cir. 1995).  "General findings are insufficient:  rather the ALJ
26 must identify what testimony is not credible and what evidence
27 undermines the claimant's complaints."  *Lester*, 81 F.3d at 834;
28 *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The ALJ may

consider at least the following factors when weighing Plaintiff's
credibility:  Plaintiff's reputation for truthfulness,
inconsistencies either in her testimony or between her testimony
and her conduct, Plaintiff's daily activities, Plaintiff's work
record, and testimony from physicians and third parties concerning
the nature, severity, and effect of the symptoms of which she
complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir.
2002).  If the ALJ's credibility finding is supported by
substantial evidence in the record, we may not engage in second-
guessing.  *Id.* at 959.

The ALJ considered the evidence of record and concluded that
Plaintiff's medically determinable impairments could reasonably be
expected to produce the alleged symptoms, but that Plaintiff's
statements concerning the intensity, duration and limiting effects
of these symptoms were not entirely credible.  (AR 23).  The ALJ
discussed the evidence relating to Plaintiff's subjective
complaints (AR 22-25), and determined that Plaintiff's allegations
of significant limitations in her ability to perform basic work
activities, such as standing, walking and lifting, were not
credible.  (AR 25).

The ALJ indicated that, while Plaintiff experiences bilateral
arm pain and left ankle pain, the evidence of record failed to
demonstrate that she is totally disabled as alleged.  (AR 23).  A
lack of supporting objective medical evidence is a factor which
may be considered in evaluating an individual's credibility,
provided that it is not the sole factor.  *Bunnell v. Sullivan*, 947
F.2d 341, 345 (9th Cir. 1991).
///

REPORT AND RECOMMENDATION ~ 8

The ALJ noted that, with regard to Plaintiff's forearm pain, nerve conduction studies performed in June of 2003 revealed no electrodiagnostic evidence of any median mononeuropathy at the wrist (carpal tunnel syndrome) or focal ulnar neuropathy.  (AR 24, 102).  An MRI of the wrist revealed only a small cyst on the palm surface of the wrist and a possible tear on one image but these did not correspond with her complaints of pain.  (AR 24, 108).  A January 2004 cervical spine MRI demonstrated no abnormalities. (AR 24, 168, 173).  On January 8, 2004, Plaintiff reported that her medications seemed to be doing well and she only experienced increased forearm pain if she attempted to "overdo it," such as shoveling snow.  (AR 24, 168).  A May 2005 examination revealed full range of motion of her neck, no tenderness along the trapezius, compression maneuvers for thoracic outlet syndrome were negative on both sides, there was excellent pulses in her wrists and no obvious deformity, atrophy or effusions of her upper extremities.  (AR 24, 271-272).  Her range of motion in bilateral upper extremities was noted as within full range with complaints of increased pain with extremes of motion, but the test for carpal tunnel syndrome (compression test) was negative bilaterally.  (AR 24, 267).

With respect to Plaintiff's left ankle pain, the record reveals that she had an immediate response to a cortisone injection in May 2003 and her pain was resolved at that time.  (AR 23, 150).  It appears that she did not again have complaints related to her ankle until August 2004.  (AR 23, 172).

///

///

Nevertheless, in February 2005, Plaintiff reported walking up to 45 minutes at a time, four to five times a week.  (AR 23, 287). There is no mention of ankle pain again until August 19, 2005, when Plaintiff presented for an update of her Department of Health and Human Services disability evaluation.  (AR 23, 257).  Her lower extremities demonstrated no edema, good pulses and only some decreased range of motion on the left ankle.  (AR 23, 258).  In September of 2005, Plaintiff underwent another steroid injection and reported complete resolution of the pain.  (AR 23, 250-251). In March of 2006, Plaintiff indicated that the steroid injection had worked quite well until a month earlier.  (AR 23, 231-232).

With regard to Plaintiff's complaints of anxiety and depression, the ALJ assigned great weight to the August 13, 2004 consultative examination by Joyce Everhart, Ph.D.  (AR 21, 24, 141-145).  Dr. Everhart opined that Plaintiff did not need help completing her activities of daily living, she presented as positive and cooperative with the ability to relate to people, her attention, concentration and intellectual ability appeared to be within normal limits, she retained the ability to complete complex multi-step tasks, her pace was good, and her train of thought was logical and coherent.  (AR 145).  Dr. Everhart diagnosed Plaintiff with a pain disorder associated with both psychological factors and a general medical condition, chronic, and gave Plaintiff a Global Assessment of Functioning ("GAF") score of 65.[1]  (AR 144-145).  Moreover, in August and November of 2004, state agency

---

[1]A GAF of 70-61 is characterized as:  "Some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well."  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 12 (3d ed. Rev. 1987).

1  reviewing physicians, Edward T. Beaty, Ph.D., and Michael Brown,

2  Ph.D., opined that Plaintiff's mental impairments were not severe.

3  (AR 175-188, 195-208).

4      Based on the foregoing, the medical evidence of record does

5  not support Plaintiff's allegations of disabling pain and

6  limitations.  Since the ALJ notes many factors aside from the lack

7  of supporting objective medical evidence for discounting

8  Plaintiff's allegations, as discussed below, the ALJ did not err

9  in discounting Plaintiff's testimony as inconsistent with the

10 objective medical evidence of record.

11     The ALJ also noted that, although Plaintiff has received

12 treatment for the allegedly disabling impairments, the treatment

13 has been routine and conservative in nature.  (AR 23).  The ALJ

14 also stated that the record reflects significant gaps in

15 Plaintiff's history of treatment for her alleged disabling

16 impairments, suggesting that the routine and conservative

17 treatment has been generally successful in controlling her

18 symptoms.  (AR 24).  The ALJ indicated as well that "[g]iven the

19 claimant's allegations of totally disabling symptoms, one might

20 expect to see some indication in the treatment records of

21 restrictions placed on the claimant by the treating doctors.  Yet

22 a review of the record in this case reveals no restrictions."  (AR

23 24).  The ALJ noted that "[n]o physician has limited the

24 claimant's activities."  (AR 25).  No treating or examining

25 medical professional of record has determined that Plaintiff has

26 significant or disabling limitations as alleged by Plaintiff.

27 This contrasts with Plaintiff's April 9, 2004 disability report

28 which indicates she stopped working because "[her] doctor felt it

was needed."  (AR 52).  Furthermore, as indicated by the ALJ, the treatment Plaintiff has received for her complaints has been only "routine and conservative" with significant gaps in treatment.

The ALJ further indicated that Plaintiff's pain complaints relate to situational factors and have not been noted to impair her for up to 12 continuous months.  (AR 24).  An impairment is considered disabling only if it can be expected "to result in death or . . . has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Again, no medical professional of record has determined that Plaintiff has significant, long-term limitations.

The ALJ also noted Plaintiff's "impressive functioning" evidenced by a December 1, 2003 letter from Ms. Kaylor, an instructor and counsel at the Life Skills Women's Programs, as inconsistent with Plaintiff's allegedly disabling impairments. (AR 24-25, 133-134).  Plaintiff is reported to be an excellent student, bright, committed and participatory in class.  (AR 133). It is further noted that Plaintiff had done an outstanding job of using her time and attention to develop a plan for her future, using counseling, job shadow experiences, class-time and after class work to learn specialized computer software to improve her possibilities and explore options.  (AR 24-25, 133-134).  Ms. Kaylor opined that Plaintiff had done "an incredible job with very little support" in her effort to correct problems associated with the acting out of her teenage son, and additionally stated "the fact that she cares for a 5 year old and goes to school is amazing."  (AR 133).

The ALJ generally references Plaintiff's activities of daily living throughout his decision. (AR 21-25). It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Inconsistent with Plaintiff's allegations of disability, the record evidences Plaintiff was engaged in activities such as walking 45 minutes at a time, four to five times a week, shoveling snow, doing some yard work and caring for a grandchild and her own small child and difficult teenager. (AR 133-134, 168, 222, 287, 314-315). Moreover, Dr. Everhart, as well as the state agency reviewing consultants, reported that Plaintiff did not need help to complete activities of daily living.

The ALJ determined that Plaintiff's allegations of significant limitations in her ability to perform basic work activities was not credible. (AR 25). The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). After reviewing the record, the undersigned finds that the reasons provided by the ALJ for finding Plaintiff not fully credible, as outlined above, are clear and convincing and supported by substantial evidence in the record. Accordingly, the ///

ALJ did not err by concluding that Plaintiff's statements
concerning the intensity, duration and limiting effects of her
symptoms were not entirely credible.  (AR 23).

**B.    Severe Impairment**

Plaintiff asserts that the ALJ erred when he determined that
she had no severe medically determinable impairment.  (Ct. Rec. 17
at 8-16).  Plaintiff specifically argues that she provided ample
evidence, consisting of signs, symptoms, and laboratory findings,
proving the existence of severe problems with her upper
extremities, left ankle, and psychological condition.  (*Id.*)  The
Commissioner contends that the ALJ's step two finding was
supported by substantial record evidence and should be affirmed.
(Ct. Rec. 20 at 5-13).

Plaintiff has the burden of proving that she has a severe
impairment at step two of the sequential evaluation process.  42
U.S.C. § 423(d)(1)(A); 20 C.F.R. § 423(d)(1)(A), 416.912.  To meet
this burden, Plaintiff must furnish medical and other evidence
that shows that she has a severe impairment.  20 C.F.R. §
416.912(a).  The regulations, 20 C.F.R. §§ 404.1520(c),
416.920(c), provide that an impairment is severe if it
significantly limits one's ability to perform basic work
activities.  An impairment is considered non-severe if it "does
not significantly limit your physical or mental ability to do
basic work activities."  20 C.F.R. §§ 404.1521, 416.921.  "Basic
work activities" are defined as the abilities and aptitudes
necessary to do most jobs.  *See*, 20 C.F.R. §§ 404.1521(b),
416.921(b).

///

Step two is "a de minimis screening device [used] to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is "clearly established by medical evidence" S.S.R. 85-28; *see, Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005). Applying the normal standard of review to the requirements of step two, the court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Plaintiff did not have a medically severe impairment. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."); *Webb*, 433 F.3d at 687.

In this case, the ALJ concluded that Plaintiff's left ankle post traumatic osteoarthritis and bilateral wrist pain, left greater than right, result in no greater than minimal functional limitations. (AR 19-26). Accordingly, the ALJ found that Plaintiff had no severe impairment or combination of impairments. (AR 26). In making his step two determination, the ALJ thoroughly discussed and evaluated all medical evidence of record. (AR 19-26).

Plaintiff argues that her hearing testimony,[2] Dr. Everhart's consultative examination, and records from her treating physician evidence a severe mental impairment. (Ct. Rec. 17 at 14-15).

---

[2]As discussed in Section A, the ALJ properly discounted Plaintiff's subjective complaints.

REPORT AND RECOMMENDATION ~ 15

While Plaintiff correctly indicates that the August 2005 report of Plaintiff's treating physician, Andrea M. McCrady, M.D., notes depression and anxiety (Ct. Rec. 17 at 15; AR 256-258), the purpose of the evaluation was for an update on Plaintiff's DSHS disability,[3] Dr. McCrady does not assess any resultant mental limitations, and, historically, Dr. McCrady primarily treated Plaintiff for her physical complaints.  Dr. Everhart's August 13, 2004 consultative examination is the only psychological evaluation of record and, with the exception of the state agency reviewing reports, the only record assessing Plaintiff's mental functioning ability.  (AR 141-145).

Dr. Everhart opined that Plaintiff did not need help completing her activities of daily living, she presented as positive and cooperative with the ability to relate to people, her attention, concentration and intellectual ability appeared to be within normal limits, she retained the ability to complete complex multi-step tasks, her pace was good, and her train of thought was logical and coherent.  (AR 145).  Dr. Everhart diagnosed Plaintiff with a pain disorder associated with both psychological factors and a general medical condition, chronic, and gave Plaintiff a GAF score indicative of only mild symptoms.  (AR 144-145).  Furthermore, state agency reviewing physicians Beaty and Brown opined in August and November of 2004 that Plaintiff's mental impairments were not severe, and she had no restrictions of activities of daily living, no difficulties in maintaining social

---

[3]When a physician is involved in the application process, thus becoming an advocate for the claimant, an ALJ is entitled to consider this factor in evaluating credibility.  *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996).

functioning, no episodes of decompensation and only mild
difficulties in maintaining concentration, persistence or pace.
(AR 175-188, 195-208).

There are no medical reports of record indicating that
Plaintiff's mental ability to do basic work activities is
significantly limited.  The ALJ appropriately assigned significant
weight to Dr. Everhart's opinion, the only medical professional of
record to assess Plaintiff's mental functioning following an exam.
In accord with the evidence of record, Dr. Everhart concluded that
Plaintiff's was not significantly restricted by any psychological
impairment.  (AR 141-145).  Therefore, the evidence of record does
not support a finding that Plaintiff has a severe mental
impairment.

With regard to Plaintiff's bilateral wrist pain, nerve
conduction studies dated June 17, 2003 revealed no
electrodiagnostic evidence of any median mononeuropathy at the
wrist (carpal tunnel syndrome) or focal ulnar neuropathy.  (AR 24,
102).  On July 25, 2003, Paul C. Horn, M.D., examined Plaintiff.
(AR 106-107).  Dr. Horn noted her hands and wrists exhibited no
asymmetry, atrophy or tropic change, wrist and finger range of
motion were normal and there was no discernable wrist instability.
(AR 106).  An MRI of the wrist revealed only a small cyst on the
palm surface of the wrist and a possible tear on one image but
these did not correspond with her complaints of pain.  (AR 24,
108).  Dr. Horn suggested conservative therapy.  (AR 106, 108).

On December 8, 2003, Dr. McCrady ordered an MRI of
Plaintiff's neck to rule out any possibility of cervical
radiculopathy.  (AR 167).  The January 2004 cervical spine MRI

demonstrated no abnormalities.  (AR 24, 168, 173).  On January 8, 2004, Plaintiff reported that her medications seemed to be doing well and she only experienced increased forearm pain if she attempted to "overdo it."  (AR 24, 168).  A May 2005 examination revealed full range of motion of her neck, no tenderness along the trapezius, compression maneuvers for thoracic outlet syndrome were negative on both sides, there was excellent pulses in her wrists and no obvious deformity, atrophy or effusions of her upper extremities.  (AR 24, 271-272).  Her range of motion in bilateral upper extremities was noted as within full range with complaints of increased pain with extremes of motion, but the compression test, the test for carpal tunnel syndrome, was negative bilaterally.  (AR 24, 267).

With respect to Plaintiff's left ankle pain, Nicholas Tanner, D.P.M., examined Plaintiff on May 7, 2003, and indicated that she had an immediate response to a cortisone injection and her pain was resolved at that time.  (AR 23, 150).  She did not again have complaints related to her ankle until August 2004.  (AR 23, 172).  However, in February 2005, Plaintiff reported walking up to 45 minutes at a time, four to five times a week.  (AR 23, 287).  There is no mention of ankle pain again until August 19, 2005, when Plaintiff presented for an update of her Department of Health and Human Services disability evaluation.  (AR 23, 257).  Her lower extremities demonstrated no edema, good pulses and only some decreased range of motion on the left ankle.  (AR 23, 258).  In September of 2005, Dr. Tanner saw Plaintiff for complaints of recurring left foot pain.  (AR 250-251).  Plaintiff underwent another steroid injection with complete resolution of the pain.

(AR 23, 250-251).  In March of 2006, Plaintiff reported that the
steroid injection had worked quite well until a month earlier.
(AR 23, 231-232).

A review of the medical record thus reveals that no physician
has determined Plaintiff has significant or disabling physical
limitations, and the treatment Plaintiff has received for her
physical complaints has been only routine and conservative.
Moreover, it is significant to note that Plaintiff has displayed
an ability to attend some college classes and has engaged in
activities such as walking 45 minutes at a time, four to five
times a week, shoveling snow, doing some yard work and caring for
a grandchild and her own small child and difficult teenager.  (AR
133-134, 168, 222, 287, 314-315).  There are no medical reports of
record indicating that Plaintiff's physical ability to do basic
work activities is significantly limited, and, as discussed in
Section A, the ALJ properly discounted Plaintiff's subjective
complaints.  Therefore, the substantial weight of the evidence of
record does not support a finding that Plaintiff has a severe
impairment related to her physical condition.

Based on the evidence of record, as described above, the
ALJ's step two determination is supported by the substantial
weight of the record evidence.  While Plaintiff has been treated
for physical and mental complaints, Plaintiff has periodically
reported the improvement of her symptoms with medications, steroid
injections and pool therapy (AR 150, 168, 231-232, 250-251, 271),
and, as indicated by the ALJ, no medical professional of record
has opined that her assessed impairments resulted in significant
limitations or could be expected to last for a continuous period

of not less than twelve months.  The evidence of record does not reflect that Plaintiff's physical or mental ability, singly or in combination, to perform basic work activities is significantly limited.  Plaintiff thus has failed in her burden to demonstrate that she has a severe impairment.

### CONCLUSION

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is supported by substantial evidence and free of legal error.  Plaintiff is not disabled within the meaning of the Social Security Act.  Accordingly, **IT IS RECOMMENDED**:

1.    Plaintiff's Motion for Summary Judgment (**Ct. Rec. 16**) be **DENIED**.

2.    Defendant's Motion for Summary Judgment (**Ct. Rec. 19)** be **GRANTED.**

The District Court Executive is directed to enter this Report and Recommendation and provide a copy to counsel and to the referring judge.

### OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within ten (10) days following service with a copy thereof.  Such party shall file with the District Court Executive all written objections, specifically identifying the portions to which objection is being made, and the basis therefor.  Attention is directed to Fed. R. Civ. P. 6(e), which adds another three (3) days from the date of mailing if service is by mail.

///

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination.  The district judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.  See 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 73, and LMR 4, Local Rules for the Eastern District of Washington.  The magistrate judge's recommendation cannot be appealed to the Ninth Circuit Court of Appeals; only a district judge's final order or judgment can be appealed.

**DATED** this 8th day of January, 2008.

S/CYNTHIA IMBROGNO<br>
CYNTHIA IMBROGNO<br>
UNITED STATES MAGISTRATE JUDGE